## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD FEINHALS,<br><br>              Plaintiff,<br><br>   v.<br><br>AEROJET ROCKETDYNE HOLDINGS, INC.,<br>WARREN G. LICHTENSTEIN, EILEEN P.<br>DRAKE, KEVIN P. CHILTON, THOMAS A.<br>CORCORAN, JAMES R. HENDERSON, LANCE<br>W. LORD, AUDREY A. MCNIFF, and MARTIN<br>TURCHIN,<br><br>              Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Richard Feinhals ("Plaintiff"), by his undersigned attorneys, for this Complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Aerojet Rocketdyne Holdings, Inc. ("Aerojet" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Aerojet, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed acquisition of Aerojet by Lockheed Martin Corporation ("Lockheed Martin"), through Lockheed Martin's wholly-owned subsidiary, Mizar Sub, Inc. ("Merger Sub") ("Proposed Transaction").  Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.      On December 20, 2020, Aerojet entered into an agreement and plan of merger with Lockheed Martin and Merger Sub ("Merger Agreement"), whereby Merger Sub will merge with and into Aerojet, with Aerojet surviving as a wholly-owned subsidiary of Lockheed Martin.

3.      Upon consummation of the Proposed Transaction, Aerojet shareholders will be entitled to receive $56.00 in cash for each share of Aerojet common stock they hold ("Merger Consideration").

4.      On January 25, 2021, in order to convince Aerojet public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement ("Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Aerojet; (ii) the valuation analyses performed by the Company's financial advisors, Citigroup Global Markets Inc. ("Citigroup") and Evercore Group L.L.C. ("Evercore"); and (iii) the process leading up to execution of the Merger Agreement.

6.      The Proposed Transaction is expected to close in the second half of 2021, so the special meeting of Aerojet shareholders to vote on the Proposed Transaction is imminent ("Shareholder Vote").  Therefore, it is imperative that the material information omitted from the Proxy is disclosed prior to the Shareholder Vote, so the Company's shareholders can properly exercise their corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Aerojet shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated,

to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state."  *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court."  *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Aerojet's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  Further, the Company's proxy solicitor, Okapi Partners is located in this District at 1212 Avenue of the Americas, New York, NY 10036.  Last, Citigroup is located in this District at 388 Greenwich Street, New York, NY 10013.

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner

of Aerojet common stock.

12.     Defendant Aerojet is a public company incorporated under the laws of Delaware with principal executive offices located at 222 N. Pacific Coast Highway, El Segundo, CA 90245. Aerojet's common stock trades on the NYSE under the ticker symbol "AJRD."

13.     Defendant Warren G. Lichtenstein is, and has been at all relevant times, a director of the Company and Executive Chairman of the Board.

14.     Defendant Eileen P. Drake is, and has been at all relevant times, a director of the Company, Chief Executive Officer, and President.

15.     Defendant Kevin P. Chilton is, and has been at all relevant times, a director of the Company.

16.     Defendant Thomas A. Corcoran is, and has been at all relevant times, a director of the Company.

17.     Defendant James R. Henderson is, and has been at all relevant times, a director of the Company.

18.     Defendant Lance W. Lord is, and has been at all relevant times, a director of the Company.

19.     Defendant Audrey A. McNiff is, and has been at all relevant times, a director of the Company.

20.     Defendant Martin Turchin is, and has been at all relevant times, a director of the Company.

21.     The defendants identified in paragraphs 13 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.      Background of Aerojet, Lockheed Martin, and the Proposed Transaction**

22.    Aerojet designs, develops, manufactures, and sells aerospace and defense products and systems in the United States. The Company operates through two segments, Aerospace and Defense, and Real Estate. The Aerospace and Defense segment offers aerospace and defense products and systems for the United States government, including the Department of Defense, the National Aeronautics and Space Administration, and aerospace and defense prime contractors. This segment provides liquid and solid rocket propulsion systems, air-breathing hypersonic engines, and electric power and propulsion systems for space, defense, civil, and commercial applications; and armament systems. The Real Estate segment engages in the re-zoning, entitlement, sale, and leasing of the Company's excess real estate assets. It owns approximately 11,394 acres of land adjacent to the United States Highway 50 between Rancho Cordova and Folsom, California east of Sacramento.

23.    Lockheed Martin is a security and aerospace company that engages in the research, design, development, manufacture, integration, and sustainment of technology systems, products, and services worldwide. It operates through four segments: Aeronautics, Missiles and Fire Control, Rotary and Mission Systems, and Space Systems. The Aeronautics segment offers combat and air mobility aircraft, unmanned air vehicles, and related technologies. The Missiles and Fire Control segment provides air and missile defense systems; tactical missiles and air-to-ground precision strike weapon systems; logistics; fire control systems; mission operations support, readiness, engineering support, and integration services; manned and unmanned ground vehicles; and energy management solutions. The Rotary and Mission Systems segment offers military and commercial helicopters; ship and submarine mission and combat systems; mission systems and sensors for rotary and fixed-wing aircraft; sea and land-based missile defense systems; radar systems; the Littoral combat ship; simulation and training services; and unmanned systems and technologies. It also supports government

customers in cybersecurity; and delivers communications, and command and control capabilities through mission solutions for defense applications. The Space Systems segment offers satellites; space transportation systems; strategic, advanced strike, and defensive missile systems; and classified systems and services in support of national security systems.

24.    According to the December 20, 2020, press release announcing the Proposed Transaction:

### Aerojet Rocketdyne to be Acquired by Lockheed Martin in $5.0 Billion All-Cash Transaction

EL SEGUNDO, Calif., Dec. 20, 2020 (GLOBE NEWSWIRE) — Aerojet Rocketdyne Holdings, Inc. (NYSE: AJRD) today announced that it has entered into a definitive agreement to be acquired by Lockheed Martin Corporation (NYSE: LMT) in an all-cash transaction with a total equity value of $5.0 billion.

Under the terms of the agreement, which has been unanimously approved by each company's Board of Directors, Lockheed Martin will acquire Aerojet Rocketdyne for $56.00 per share in cash, representing a premium of approximately 33% to Aerojet Rocketdyne's closing stock price on December 18, 2020, and a premium of approximately 42% to the Company's volume weighted average stock price ("VWAP") for the last 90 trading days.

As part of the transaction, Aerojet Rocketdyne declared a $5.00 per share pre-closing special dividend to holders of its common shares and convertible senior notes, on an as-converted basis. The special dividend will be paid on March 24, 2021, to holders of record as of March 10, 2021. The payment of this special dividend, unless revoked, will adjust the consideration to be paid by Lockheed Martin to $51.00 per share at closing.

"We are pleased to bring together our complementary companies in a transformative transaction that will provide premium cash value for our stockholders and tremendous benefits for our employees, customers and partners," said Eileen P. Drake, CEO and President of Aerojet Rocketdyne. "Joining Lockheed Martin is a testament to the world-class organization and team we've built and represents a natural next phase of our evolution. As part of Lockheed Martin, we will bring our advanced technologies together with their substantial expertise and resources to accelerate our shared purpose: enabling the defense of our nation and space exploration. On behalf of the Aerojet Rocketdyne Board and management team, I'd like to thank all of our employees for their unwavering dedication and focus in helping us achieve this great milestone."

The transaction is expected to close in the second half of 2021 and is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by Aerojet Rocketdyne's stockholders. A transition team will be formed to

allow for a seamless integration and ensure continuity for customers, employees and other stakeholders.

(Emphasis in original).

25.   The Merger Consideration represents inadequate compensation for Aerojet shareholders.  Proxy, 5.

26.   Therefore, it is imperative that the Company's shareholders receive the material information (discussed in detail below) that Defendants omitted from the Proxy, necessary for them to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Transaction.

**II.    The Proxy Omits Material Information**

27.   Defendants filed a materially incomplete and misleading Proxy with the SEC, despite the Individual Defendants being obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders, in order to ensure that it did not contain any material misrepresentations or omissions.  Therefore, the Proxy should be amended prior to the Shareholder Vote, so the Company's shareholders can make an informed voting decision in connection with the Proposed Transaction.

28.   First, the Proxy fails to provide the figures for the inputs underlying Aerojet's EBITDA and Unlevered Free Cash Flow for fiscal years 2020 through 2029, in each of the following four sets of projections: (i) Base Case Forecast; (ii) Adjusted Base Case Forecast; (iii) Risk Adjusted Case Analysis; and (iv) Management Presentation Forecast. Proxy, 75-78. In all four sets of projections, EBITDA is defined as operating income plus depreciation and amortization, so the figures for operating income, and depreciation and amortization must be disclosed. *Id.*  Also, for all four sets of projections, Unlevered Free Cash Flow was calculated as EBITDA less capital expenditures and taxes; therefore, the figures for capital expenditures and taxes must be disclosed. *Id.*

7

29.     Similarly, for Citigroup and Evercore's respective *adjusted* projections for the Base Case Forecast and Adjusted Base Case Forecast, Defendants must disclose the figures for the inputs underlying calculation of Adjusted EBITDA and Adjusted Unlevered Free Cash Flow. *Id.* at 75-77.

30.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Here, Defendants have disclosed four sets of the Company's projections, but the Proxy omits the figures underlying the inputs used to calculate those projections.

31.     Second, the Proxy omits material information regarding Citigroup and Evercore's financial analyses with respect to the Proposed Transaction.

A.   Citigroup's Financial Analyses

32.     For the *Present Value of Future Share Price Analysis*, the Proxy fails to disclose the inputs and assumptions underlying the selected Adjusted EBITDA multiples of 9.5x to 10.9x to estimates of Adjusted EBITDA of Aerojet for fiscal years 2022 through 2024. Proxy, 60.

33.     Regarding Citigroup's *Selected Public Companies Analysis*, the Proxy states that the financial data for the selected companies was based on publicly available Wall Street research analysts' estimates, yet it does not disclose which research analysts Citigroup observed. *Id.* at 61.

34.     With respect to the *Discounted Cash Flow Analysis* for the Company, the Proxy omits

the following: (i) range of estimated terminal values for Aerojet under each set of Aerojet

Rocketdyne Forecasts, calculated by Citigroup; (ii) the inputs and assumptions underlying

application of the illustrative range of perpetuity growth rates of 2.0% to 3.0%, used to calculate

those estimated terminal values; (iii) the inputs and assumptions underlying the capital asset pricing

model Citigroup utilized in selecting the discount rates ranging from 7.8% to 9.0%; (iv) the

Company's net debt as of September 30, 2020; and (v) the number of fully diluted outstanding shares

of Aerojet common stock. *Id.* at 59-60.

> ### B. Evercore's Financial Analyses

35.     Evercore's *Discounted Cash Flow Analysis* also omits the following: (i) the terminal

values Evercore calculated for Aerojet; and (ii) the inputs and assumptions underlying application

of perpetuity growth rates of 2.0% to 3.0%. *Id.* at 66.

36.     These key inputs are material to the Company's shareholders, and their omission

renders the summary of Citigroup and Evercore's respective *Discounted Cash Flow Analyses* above

incomplete and misleading.  As one highly-respected law professor explained regarding these crucial

inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes

several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff,

Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate

discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly
> affect the discounted cash flow value.  For example, a change in the discount rate by
> one percent on a stream of cash flows in the billions of dollars can change the
> discounted cash flow value by tens if not hundreds of millions of dollars….This issue
> arises not only with a discounted cash flow analysis, but with each of the other
> valuation techniques.  *This dazzling variability makes it difficult to rely, compare, or
> analyze the valuations underlying a fairness opinion **unless full disclosure is made of
> the various inputs in the valuation process, the weight assigned for each, and the
> rationale underlying these choices**.* The substantial discretion and lack of guidelines
> and standards also makes the process vulnerable to manipulation to arrive at the "right"
> answer for fairness.  This raises a further dilemma in light of the conflicted nature of
> the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, the Company's shareholders cannot evaluate for themselves the reliability of Citigroup and Evercore's *Discounted Cash Flow Analyses*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company, or were the result of an unreasonable judgment by Citigroup and Evercore, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

37.     As for the *Equity Research Analyst Price Targets* Analysis, the Proxy fails to disclose the equity research analysts Evercore reviewed for the public market trading price targets for Aerojet common stock, as well as the actual price targets Evercore utilized. Proxy, 70.

38.     With respect to Evercore's *Illustrative Present Value of Future Share Price* Analysis, the Proxy omits Aerojet's estimated calendar year 2024 EPS based on both the Base Case Forecast and the Adjusted Base Forecast, and the inputs and assumptions underlying application of a range of illustrative price-to-earnings ratios of 20.6x to 22.6x. *Id.*

39.     Finally, for the *Premiums Paid Analysis*, the Proxy does not provide the 50 individual transactions observed for this analysis and the individual premiums paid in each of those transactions. *Id.* at 70-71.

40.      Third, the Proxy fails to disclose information regarding the process leading up to execution of the Merger Agreement. Specifically, the Proxy discloses that Aerojet was considering and/or had communications regarding a potential transaction with Companies A through E. *Id.* at 37-38, 40-41. However, the Proxy omits whether those Companies entered into confidentiality agreements with Aerojet. If those Companies did in fact execute confidentiality agreements with Aerojet, then the Proxy must also disclose whether those confidentiality agreements contained standstill provisions and, if so, whether those standstill provisions contained a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon execution

of the Merger Agreement or still remain in effect.

41.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

45.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

46.     Defendants have issued the Proxy with the intention of soliciting the Company's public common stockholders support for the Proposed Transaction.   Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the Company's financial projections; (ii) the valuation analyses performed by Citigroup and Evercore; and (iii) the process leading up to execution of the Merger Agreement.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

48.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Citigroup and Evercore reviewed and discussed their financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by Citigroup and Evercore, as well as their fairness opinions and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and

the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Citigroup and Evercore's analyses in connection with their receipt of the fairness opinions, question Citigroup and Evercore as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

49.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

50.     Aerojet is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

51.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable     injury     that     Defendants'     actions     threaten     to     inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Aerojet within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Aerojet , and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

56.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed

and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)**

60.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

62.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

63.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

64.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 1, 2021 **MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*